IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARCIE FISHER BORNE, for herself )
and as guardian *ad litem* for M.F.-B., )
a minor; et al.; )
                                                                           )
            Plaintiffs, )
                                                                         )
  vs. )        Case No. 1:12-cv-00589-UA-JEP
                                                                         )
JOHN W. SMITH, in his official )
capacity as the Director of the )
North Carolina Administrative Office )
of the Courts; et al.; )
                                                                        )
            Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants moved to dismiss the complaint filed in this matter pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Pursuant to Rule 7.3 of the Local Rules of Civil Practice for the Middle District of North Carolina the defendants submit this memorandum in support of their motion to dismiss.

## Nature of the Case

Plaintiffs have brought this action pursuant to 42 U.S.C. § 1983, alleging North Carolina's prohibition against "second parent adoptions" violates their rights to due process and equal protection under the United States Constitution. They seek a declaration that North Carolina's adoptions statutes which are the basis of this prohibition are void and unenforceable and that Defendants must accept and process "second parent" adoptions consistently with stepparent adoptions.

1

## Statement of Facts

### A. Relevant Background Information

This case was brought by individuals comprising six North Carolina families. Each family consists of two parents who are in a same-sex relationship and their children. (Compl. ¶ 1) In each family, the non-legal parent wishes to adopt the child or children he or she is currently raising with the legal parent in a process referred to as a "second parent" adoption. "Second parent adoptions" allow an unmarried partner who is the non-legal parent to adopt his or her partner's child while the legal parent partner retains all rights to the child as well. (Compl. ¶ 1-2). Plaintiffs stipulate that "second parent adoptions" are not recognized in North Carolina. (Compl. ¶ 2). The North Carolina Supreme Court in Boseman v. Jarrell, 364 N.C. 357, 704 S.E. 2d 494 (2010), held, as a matter of North Carolina statutory law, that North Carolina courts do not have subject matter jurisdiction over petitions for "second parent" adoptions. The plaintiffs allege that this prohibition against "second parent" adoptions violates their constitutional rights and harms their children. (Compl. ¶ 3) They seek the right to adopt their partners' children in the same manner as stepparent adoptions in North Carolina, where the legal parent of the child retains his or her rights when the spouse adopts. (Compl. ¶ 322)

Defendant John W. Smith is the Director of the North Carolina Administrative Office of the Courts ("AOC"). He acts in a supervisory capacity and does not exercise the judicial power of the State. See N.C. Const., art. IV, § 15; N.C. Gen. Stat. § 7A–340

(2011); see also N.C. Gen. Stat. § 7A–343 (2011) (enumerating the duties of the AOC director).

Defendant Hon. David L. Churchill is the Clerk of Superior Court for Guilford County, and Defendant Hon. Archie L. Smith III is the Clerk of Superior Court for Durham County. Under North Carolina law, adoptions are special proceedings that must be conducted before the clerk of superior court. N.C. Gen. Stat. § 48–2–100. When acting in this capacity, clerks of superior court are judicial officers of the Superior Court Division of North Carolina's General Court of Justice. See N.C. Gen. Stat. § 7A–40 (2011) (conferring judicial powers in special proceedings on the clerk of superior court).

**B. North Carolina's Statutory Adoption Scheme**

North Carolina allows both agency and independent or direct adoptions. Direct adoptions can be adoptions by persons unrelated to the child, relatives of the child, and stepparents. Petitioners may be a married couple or an individual.

If an adoption petitioner is married, the spouse must join in the petition unless incompetent or joinder is waived. N.C. Gen. Stat. § 48-2-301(b). If an adoption petitioner is unmarried, no other individual may join in the petition. N.C. Gen. Stat. § 48-2-301(c). The legal consequences of all adoption decrees are set out in N.C. Gen. Stat. § 48-1-106. Subsections (a) and (c) clearly state that the adoption decree "effects a complete substitution of families for all legal purposes" and "severs the relationship of parent and child between the individual adopted and that individual's biological or previous adoptive parents." The only exception to this complete substitution is found in

subsection (d) which provides that an adoption by a stepparent has no effect on the relationship between the child and the parent who is the stepparent's spouse. "Stepparent" is defined as an "individual who is the spouse of a parent of a child, but who is not the legal parent of the child." N.C. Gen. Stat. § 48-1-101(18).

## Questions Presented

I. Does this Court lack subject matter jurisdiction over Plaintiffs' claims, requiring dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1)?

II. Based on the allegations in their Complaint, have Plaintiffs failed to state a claim upon which relief can be granted, requiring this Court to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6)?

III. Should this Court abstain from adjudicating this matter?

## Argument

**I. This Court lacks subject matter jurisdiction over Plaintiffs' claims, requiring dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.**

**A. Standard of review**

A motion filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a court's subject matter jurisdiction. If a defendant asserts a lack of subject matter jurisdiction in a motion to dismiss, the plaintiff bears the burden of establishing that jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

**B. Plaintiffs do not have standing to bring this action.**

As the United States Supreme Court has articulated, "[t]he question of standing is whether the litigant is entitled to have the court decide the merits" of an issue. Warth v. Seldin, 422 U.S. 490, 498 (1975). The constitutional dimension of standing requires the

plaintiff to have suffered (1) an "injury in fact" (2) that is fairly traceable to the defendant's action and (3) is likely to be "redressed by a favorable decision" of the court. See Lujan, 504 U.S. at 560–61. There are also prudential limitations on the class of people who can invoke the court's power. The Supreme Court has held that when an alleged injury is a "generalized grievance," "that harm alone normally does not warrant the exercise of jurisdiction." Warth, 422 U.S. at 499.

**1. Plaintiffs' allegations do not show a legally recognized injury.**

The injury necessary to invoke constitutional standing must be concrete and particularized and actual or imminent, not conjectural or hypothetical. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000). A review of Plaintiffs' complaint reveals the absence of any concrete and particularized injury, actual or imminent, that has been suffered by "Second Parent Plaintiffs," "Legal Parent Plaintiffs," or "Child Plaintiffs."

As to each adult couple among the plaintiffs, at least one is either the biological parent or legal adoptive parent of the child or children in their family. All adult plaintiffs provide stable, nurturing, and loving environments for the children in their homes. (Compl. ¶ 73, 75, 110, 113, 144, 161, 180, 210). Indeed, based on their allegations, the adult plaintiffs allege that they make decisions jointly regarding their own lives and the lives of their children—they cook and care for the children, attend to the children's medical needs, and are involved in taking the children to their medical visits and coordinate their work schedules to be home with the children. (Compl. ¶ 78, 107-108,

5

162, 183). The adult plaintiffs allege concerns about inheritance and succession issues, (Compl. ¶ 246-249), but these concerns can be cured through alternative legal measures, such as by will, power of attorney, by trust, designating the children as their legal beneficiaries, and the use of standby and testamentary guardianship pursuant to Chapter 35A of the North Carolina General Statutes. The North Carolina adoption code does not prevent such actions. Based on these allegations, none of the plaintiffs have suffered an injury in fact. Likewise, Plaintiffs' general statements about possible sociological and psychological effects from a lack of a legal parent relationship with the "second parent" do not establish injury in fact. These allegations are entirely conjectural and hypothetical and are not specific to the plaintiffs. Many children are reared by persons who are not their biological or adoptive parent.

Based upon the complaint, all child plaintiffs are being raised in a loving, caring environment with two people who are committed to their well-being. To have standing, Plaintiffs must prove a concrete, palpable injury, not merely argument through self-serving declarations. Burke v. City of Charleston, 139 F.3d 401, 406 (4th Cir. 1998).

   **2. Plaintiffs allegations do not establish a causal relationship between their alleged injuries and the actions of the named defendants.**

Even assuming Plaintiffs have suffered a legally recognized injury, their allegations fail to show the requisite causal connection between any injury and the actions of Defendants. The Supreme Court recommends that even when a plaintiff has alleged a redressable injury sufficient to satisfy the standing requirement, courts should refrain from "adjudicating abstract questions of wide public significance which amount to

6

generalized grievances." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474–75 (1982). Based on the same reasoning, the Supreme Court has refused to recognize "a generalized grievance against allegedly illegal government conduct as sufficient for standing." United States v. Hays, 515 U.S. 737, 743 (1995).

No plaintiff has alleged that they are presently a party to a petition to adopt in North Carolina. Rather, the underlying basis of this lawsuit appears to be more of a generalized grievance related to the plaintiffs' inability to legally marry in North Carolina rather than their inability to adopt jointly. See N.C. Const. art. XIV, § 6; N.C. Gen. Stat. § 51–1.2 (2011). Such a grievance, however, goes beyond the focus of North Carolina's adoption code.

While Defendant John W. Smith is the Director of the North Carolina Administrative Office of the Courts, he serves only in an advisory capacity and has no role or authority in adoption proceedings. See N.C. Const., art. IV, § 15; N.C. Gen. Stat. § 7A–340 (2011); see also N.C. Gen. Stat. § 7A–343 (2011).

Defendants Churchill and Archie L. Smith III, as clerks of superior court and judicial officers in adoption proceedings, are both charged with enforcing the laws of this state. However, there is no allegation that any of the defendants have somehow improperly done their jobs, or that they have even been called upon to preside over an adoption proceeding involving any of the plaintiffs. Thus, Plaintiffs' alleged injuries are not connected to any action taken by the named defendants. Again, where a plaintiff lacks

standing, federal courts are divested of subject matter jurisdiction. Allen v. Wright, 468 U.S. 737, 750–51 (1984).

### 3. Futility

The courts have held that the "threshold requirement for standing may be excused where a plaintiff makes a substantial showing that the application for the benefit would have been futile. See Jackson-Bey v. Hanslmaier, 115 F.3d 1091, 1096 (2d Cir. 1997) (citing Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 365–66 (1977)). These cases, however, deal with ministerial actions. The present plaintiffs argue it would be futile to file an action and make their constitutional arguments in North Carolina's General Court of Justice; the forum which the Supreme Court has repeatedly recognized is the appropriate forum for matters involving domestic relations. See McCarty v. McCarty, 453 U.S. 210, 220 (1981). Further, the plaintiffs' constitutional claims have not been made to the North Carolina's courts. In the case cited by the plaintiffs to support their futility argument, the North Carolina Supreme Court was not called upon to determine whether the State's adoption statutes violated the Equal Protection and Due Process clauses of the United States Constitution. Boseman v. Jarrell, 364 N.C. 537, 704 S.E.2d 494 (2010). North Carolina courts provide an adequate forum for the plaintiffs' constitutional claims. The plaintiffs should not be permitted to argue futility to avoid the actual controversy requirement and to avoid bringing their claims in the proper forum.

## II. Plaintiffs have failed to state a claim upon which relief can be granted, requiring dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Standard of review

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint. The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions" and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

### B. North Carolina's Adoption Statutes Do Not Violate The Equal Protection Clause In That They Are Rationally Related To A Legitimate Government Interest.

It is well settled that classifications that neither involve a fundamental right nor create

a suspect classification are accorded a strong presumption of validity. North Dakota v. United States, 495 U.S. 423, 433 (1990). There is no fundamental right to adopt and North Carolina's limitation of adoption to single persons and married couples does not create a suspect classification. In cases such as this one, the Supreme Court's attitude toward the statutory work of legislatures has been deferential. In Felix v. Milliken, 463 F. Supp. 1360 (1978) the Court noted:

> Although no precise formula has been developed, the Court has held that the Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

Id. at 1365 (quoting McGowan v. Maryland, 366 U.S. 420, 425-26 (1961)). "In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classification made by its laws are imperfect." Dandridge v. Williams, 397 U.S. 471, 485 (1970).

Courts have developed the rational basis standard, a less restrictive standard to evaluate the type of classification involved in this case. See San Antonio Indep. Sch. Dist. v. Rodriquez, 411 U.S. 1 (1973). The rational basis test affords wide latitude to social and economic legislation. "The Constitution presumes that even improvident decisions will eventually be rectified by the democratic process.'" City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985)). Thus, a legislative classification is accorded a strong presumption of validity and "must be upheld against equal protection

challenge if there is any reasonable conceivable set of facts that could provide a rational basis for the classification." Heller v. Doe, 509 U.S. 312, 320 (1993). Under the rational basis test, the question is simply whether the challenged legislation is rationally related to a legitimate government interest. Id.

Plaintiffs cannot satisfy their heavy burden of negating every conceivable basis supportive of North Carolina's adoption statute, because there is an unassailable rational basis supporting the classification here at issue - the North Carolina General Assembly can favor parenthood by a married couple or single individual as best furthering the interest of adopted children. The legislature is free to determine that adoption by unmarried partners, in a relationship that is freely severable, is not a sufficiently stable and nurturing basis for an adoption.

Plaintiffs allege there is no rational basis for allowing stepparent adoptions, in which the biological parent/spouse retains parental rights, while not allowing "second parent" adoptions, in which the biological parent/partner retains parental rights. However, North Carolina's stepparent adoption statutes simply further the State's policy for adoption by married couples.

Defendants in this case have not violated the Equal Protection Clause of the United States Constitution. N.C. Gen. Stat. § 48-2-301 states in part that "Except as authorized by Articles 4 and 6 of this Chapter, the spouse of a petitioner must join in the petition, ... [I]f the individual who files the petition is unmarried, no other individual may join in the petition.....". No inquiry is made as to sex or sexual preference. Two sisters cannot adopt

11

jointly. A boyfriend and a girlfriend cannot adopt jointly. A paternal and maternal grandparent (of any combination of sexes) cannot adopt jointly. Two previously married, but now divorced, individuals cannot adopt jointly. Two same sex friends cannot adopt jointly.

Plaintiffs argue they are a suspect class. This is not so. Some classifications, like those based on race and gender, are deemed inherently "suspect" because they are rarely relevant to attaining a permissible legislative goal, and thus are subjected to varying degrees of heightened scrutiny by the courts. Plyler v. Doe, 457 U.S. 202, 216 & n.14 (1982). Other classifications will likewise be treated as suspect where they have the purpose or effect of burdening a group in the exercise of a fundamental right protected by the Constitution. Id. at 217 & n.15. But the vast majority of governmental action—especially in matters of local economics and social welfare, where state governments exercise plenary police power—enjoys a "strong presumption of validity" and must be sustained against constitutional challenge "so long as it bears a rational relation to some legitimate end." Helton v. Hunt, 330 F.3d 242, 246 (2003).

The fact is that the adoption laws of North Carolina do not prohibit the adoption of children based upon the sexual orientation of the party wishing to adopt. The North Carolina General Assembly clearly enacted Chapter 48 of the General Statutes of North Carolina with the intent to establish the exclusive procedure by which a minor child may be adopted. The adoption laws require that those petitioning to adopt a child must be single, married, or the married spouse of the legal parent. Here, because Plaintiffs have

12

alleged neither unfavorable treatment based on a suspect classification or a violation of a fundamental right otherwise guaranteed by the Constitution, any analysis of the adoption laws of North Carolina would necessarily implicate only the "rational basis" standard. Moreover, before even that analysis, this Court would have to conclude that Plaintiffs have shown differential treatment from similarly situated people or groups. Plaintiffs have not and cannot do so. North Carolina's General Assembly has simply chosen to distinguish between unmarried couples of any sex or sexual orientation and married couples. Plaintiffs' proper mode of redress for this kind of grievance would be to advocate for change to this policy by engaging in the political process, not by filing an equal protection lawsuit in federal court.

**C. North Carolina's Adoption Statutes Do No Violate the Due Process Clause.**

Plaintiffs claim that the prohibition against consideration of petitions for second parent adoptions by same-sex couples violates the plaintiffs' fundamental right to parental autonomy protected by the Due Process Clause of the United States Constitution by improperly burdening their fundamental right to make decisions concerning the care, custody and control of their children. They also claim that they have no adequate remedy at law to redress the wrongs alleged in the complaint, which they claim are continuing in nature and will cause irreparable harm. There is no basis for these claims.

The Fourteenth Amendment of the United States Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. Amend. XIV, § 1. When a plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure

13

to provide procedural due process, a "familiar two-stage analysis" is used to inquire (1) whether "the asserted individual interests are encompassed within the fourteenth amendment's protection of 'life, liberty, or property' "; and (2) whether the procedures available provided the plaintiff with "due process of law." Board of Regents v. Roth, 408 U.S. 564, 569-72 (1972),

Plaintiffs fail to meet the first step of the analysis described in Roth. The opportunity to adopt is not a fundamental liberty. Adoption is totally statutory; it did not exist at common law. Wilson v. Anderson, 232 N.C. 212, 216, 59 S.E.2d 836, 839 (1950). Plaintiffs have not been deprived of a liberty interest cognizable under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

The adoption laws of North Carolina do not amount to a constitutionally protected interest in family integrity, or "parental autonomy" as alleged by Plaintiffs. The adoption laws of North Carolina do not guarantee any particular outcome relative to an application for adoption. Pursuant to Chapter 48 of the North Carolina General Statutes, the state trial court has the authority to grant or deny an application for adoption as the best interests of the child dictate. N.C. Gen. Stat. § 48-2-603. The opportunity to petition for adoption in North Carolina does not give rise to a protected liberty interest for federal due process purposes.

Therefore, in determining whether a plaintiff's procedural due process rights have been violated, only if a protected interest is found does there need to be an examination of whether the deprivation of the protected interest was done in accordance with due

14

process. If no protected liberty interest is found, then there is no need to decide what, if any, procedural process was due. As Plaintiffs' allegations do not sufficiently allege a deprivation of a protectable liberty interest, any claimed violation of due process associated therewith must be dismissed. Guthrie v. McClasky, 2012 U.S. Dist. LEXIS 51753 (W.D. Va. Apr. 12, 2012).

**III.    This Court Should Abstain From Adjudicating This Case.**

The Burford abstention doctrine prevents federal courts from exercising jurisdiction over difficult questions of state law or areas of coherent state policy. Burford v. Sun Oil Co., 319 U.S. 315 (1943). The discretion to abstain is tempered by the truism that "the federal courts have a virtually unflagging obligation to exercise their jurisdiction," Deakins v. Monaghan, 484 U.S. 193, 203 (1988). Abstention "remains the exception, not the rule," and the Supreme Court, in order to safeguard this principle, has "carefully defined . . . the areas in which such abstention is permissible." New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359 (1989).

In this case, Plaintiffs challenge the North Carolina adoption code, which designates prospective adoptive parents in North Carolina. The statutory adoption requirements in North Carolina fit within the parameters of Burford, and the outcome of this case will affect the application of adoption law state-wide. In addition, North Carolina has an overriding interest in establishing policies regarding prospective adoptive children to ensure that they are in suitable homes, and the exercise of federal review would be disruptive to those policies. Adoption is an area of domestic relations law that is

15

particularly state-based, as there is no set of uniform adoption laws adopted by all states. In enacting the North Carolina adoption laws, the legislature specifically stated that "[t]he Generally Assembly finds that it is in the public interest to establish a clear judicial process for adoptions, to promote the integrity and finality of adoptions, to encourage prompt, conclusive disposition of adoption proceedings, and to structure services to adopted children, biological parents, and adoptive parents that will provide for the needs and protect the interests of all parties to an adoption, particularly adopted minors. . . . In construing this Chapter, the needs, interests, and rights of minor adoptees are primary." N.C. Gen. Stat. § 48–1–100 (2011). North Carolina has enacted its own state laws and provided a scheme for judicial review. Plaintiffs have not pursued this avenue of appeal. (Compl. ¶ 281)

The Supreme Court has repeatedly recognized that domestic relations matters are purely the province of state law. McCarty v. McCarty, 453 U.S. 210, 220 (1981). While the power to legislate family law is not without limitations, it is within the exclusive province of the states to legislate. North Carolina's statutory procedures, including those regulating the creation of parental responsibilities through adoption, recognize the overriding interest of the state in protecting and providing for children. N.C. Gen. Stat. §§48–1–100 to 48–10–105. Unlike biological parentage, the law governing adoptions in North Carolina is wholly statutory. Wilson v. Anderson, 232 N.C. 212, 216, 59 S.E.2d 836, 839 (1950) ("Adoption is a status unknown to common law . . . ."). Courts have recognized this important distinction and found that adoption is not a right but a statutory

16

privilege. See Lofton v. Sec'y of Fla. Dep't of Children & Family Servs., 358 F.3d 804, 809 (11th Cir. 2004). "The state's overriding interest [in adoption proceedings] is not providing individuals the opportunity to become parents, but rather identifying those individuals whom it deems most capable of parenting adoptive children and providing them with a secure family environment." Id. at 811.

Federal courts should abstain from deciding cases presenting "'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar,'" or those to which adjudication in a federal forum "'would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'" New Orleans Pub. Serv., Inc. v. Council of New Orleans (NOPSI), 491 U.S. 350, 361 (1989) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)). There is no "formulaic test" for Burford abstention. Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 727 (1996). "Although [the] doctrine has many different forks and prongs, [abstention's] central idea has always been one of simple comity." Johnson v. Collins Entertainment Co., 199 F.3d 710, 718–19 (1999). Thus, the "Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems." Id. at 719. As the Court explained, although "abstention from the exercise of federal jurisdiction is the exception, not the rule, its importance in our system of dual sovereignty cannot be underestimated." Id. This Court should exercise its discretionary power with proper regard for the rightful independence of state governments in carrying

17

out their domestic policy and abstain from adjudicating this case. <u>Burford</u>, 319 U.S. at 318.

## **Conclusion and Relief Requested**

WHEREFORE, Defendants respectfully move the Court to grant its Motion to Dismiss Plaintiffs' Complaint, award Defendants attorneys' fees and costs and grant such further relief as this Court deems just and equitable.

Respectfully submitted, this the 6th day of August, 2012.

        ROY COOPER
        Attorney General

        /s/ Mabel Y. Bullock
        Special Deputy Attorney General
        N.C. State Bar No. 10592
        mbullock@ncdoj.gov

        /s/ Grady L. Balentine, Jr.
        Special Deputy Attorney General
        North Carolina State Bar No. 19541
        gbalentine@ncdoj.gov

        North Carolina Department of Justice
        P.O. Box 629
        Raleigh, N.C. 27602
        Telephone: (919) 716-6864
        Facsimile: (919) 716-6758
        Counsel for Defendants

CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COMPLAINT using the CM/ECF system which will send notification of such filing to counsel of record as follows:

>Jonathan Drew Sasser
>Ellis & Winters, LLP
>jon.sasser@elliswinters.com
>*Attorney for Plaintiffs*
>
>Catherine M. Bradley
>Sullivan & Cromwell LLP
>BradleyC@sullcrom.com
>*Attorney for Plaintiffs*
>
>Christopher A. Brook
>American Civil Liberties Union of NC
>cbrook@acluofnc.org
>*Attorney for Plaintiffs*
>
>Daniel W. Meyler
>Sullivan & Cromwell LLP
>Meylerd@sullcrom.com
>*Attorney for Plaintiffs*
>
>David A. Castleman
>Sullivan & Cromwell LLP
>CastlemanD@sullcrom.com
>*Attorney for Plaintiffs*
>
>Elizabeth O. Gill
>American Civil Liberties Union Foundation
>egill@aclunc.org
>*Attorney for Plaintiffs*
>
>Garrard R. Beeney
>Sullivan & Cromwell LLP
>beeneyg@sullcrom.com
>*Attorney for Plaintiffs*

James D. Esseks
American Civil Liberties Union Foundation
jesseks@aclu.org
*Attorney for Plaintiffs*

Jeremy M. Falcone
Ellis & Winters, LLP
jfalcone@elliswinters.com
*Attorney for Plaintiffs*

Rose A. Saxe
American Civil Liberties Union Foundation
rsaxe@aclu.org
*Attorney for Plaintiffs*

William R. Kleysteuber
Sullivan & Cromwell LLP
KleysteuberR@sullcrom.com
*Attorney for Plaintiffs*

This the 6th day of August, 2012.

/s/ Grady L. Balentine, Jr.
Special Deputy Attorney General