UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARCIE FISHER-BORNE, *et al.*, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00589-WO-JEP |
| | ) | |
| JOHN W. SMITH, *et al.*, | ) | |
|     Defendants. | ) | |

**REPLY BRIEF IN SUPPORT OF THE
STATE DEFENDANTS' MOTION TO DISMISS**

Pursuant to Rule 7.3 of the Local Rules of Civil Practice for the Middle District of North Carolina, the State Defendants[1] submit this reply brief. The State Defendants incorporate the Nature of the Case and Statement of Facts of their previous memorandum of law. [DE 66].

## Argument

**A. Pursuant To Rule 12(b)(2), Plaintiffs Have Failed to Establish The Requisite Connection Between The State Defendants And The Challenged Laws.**

Plaintiffs' allegations fail to show the required nexus between the challenged marriage laws and the State Defendants. [DE 66, pp 4-7; DE 69, pp 5-6]. Specifically, Plaintiffs' first amended complaint lacks actual facts to establish that either the Clerks, or the Director of the AOC, maintain any authority to enforce or recognize North Carolina's marriage laws. [DE 40]. In lieu of such facts, Plaintiffs contend solely that "[t]he Married Parent Plaintiffs would be entitled to apply for step-parent adoption if their marriages were recognized by the Clerks of the AOC Director, thus giving those defendants direct enforcement authority over the North Carolina marriage statutes… ." [DE 69, p. 6]. The State Defendants are incapable of recognizing (or refusing to recognize) what is a

---

[1] Pending before the court is the parties' proposed consent order that reflects the dismissal of the Attorney General as a named party-defendant, and a contemporaneous agreement to amend the case caption to include the Attorney General as an Intervenor on behalf of the State of North Carolina.

non-existent legal entity in North Carolina. Instead, the respective role of the State Defendants is to facilitate the administration of the State's existing laws in a ministerial fashion. [DE 66, pp 4-7]. Further, Plaintiffs' adoption claims independently fail to trigger any independent Fourteenth Amendment concerns [DE 66, pp 13-14, 18-19; infra p 10], especially given that any commingling of the adoption issues with the duties associated with the enforcement of the State's marriage laws is purely the product of Plaintiffs' unsubstantiated and incorrect legal conclusions.[2]

### B. Rights Guaranteed By The U.S. Constitution Do Not Require The Invalidation Of North Carolina's Marriage and Adoption Laws.

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction, based upon the lack of a federal question. See 28 U.S.C. § 1331. Contrary to implications that mere allegations are sufficient to survive a motion to dismiss under Rule 12(b)(1), [DE 69, p 7], Plaintiffs are charged with the burden of proving the existence of subject matter jurisdiction. See, e.g., KVOS v. Associated Press, 299 U.S. 269, 278 (1936); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). A motion to dismiss for lack of jurisdiction may either test the legal sufficiency of the jurisdictional allegations, or contest the facts that allege jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1994) (internal quotation marks omitted). Here, federal jurisdiction is lacking because Plaintiffs' claims are precluded by the doctrine of federalism, and want of a federal question as construed in Baker v. Nelson, 409 U.S. 810 (1972).

Baker, involved an appeal from the decision by the Minnesota Supreme Court holding that a state law defining marriage as a union between persons of the opposite sex did not violate the

---

[2] Plaintiffs further lack standing to re-litigate the North Carolina Supreme Court's interpretation of the State's adoption statutes in Boseman v. Jarrell, 704 S.E.2d 494 (N.C. 2010).

First, Eighth, Ninth, and Fourteenth Amendments of the U.S. Constitution. In dismissing that appeal, the U.S. Supreme Court concluded that Constitutional challenges to state laws prohibiting same-sex marriage do not present a federal question. Id. In order to escape the plain and binding conclusions of Baker, Plaintiffs question the jurisprudential value of the opinion, and suggest that Baker has been rendered meaningless by subsequent "doctrinal developments." [DE 69, pp 7-8]. In support of that contention, Plaintiffs cite to Hicks v Miranda, 422 U.S. 332, 344 (1975), and argue therefrom that this Court should freely ignore U.S. Supreme Court precedent. [DE 69, pp 7-8]. However, the opinion in Hicks manifestly demonstrates that all lower courts are bound by the Supreme Court's disposition of appeals for lack of a federal question, as a "dismissal for want of a substantial federal question, is a disposition on the merits," and "the lower courts are bound by summary decisions by this Court 'until such time as the [Supreme] Court informs [them] that [they] are not.'" 422 U.S. at 344-45 (internal citations omitted).

Plaintiffs offer not a single post-Baker Supreme Court opinion that sanctions the treatment of a state's marriage or adoption laws as a "federal question." On the contrary, in United States v. Windsor, 133 S. Ct. 2675, 2689-693 (2013), the Supreme Court highlighted the significance of states' rights and federalism when it invalidated the federal designation of marriage, in large part due to the failure to defer to a state's respective definition. Accordingly, it cannot be fairly claimed that "doctrinal developments" have had the effect of overruling Baker, and the application of federalism as a bar to judicial intervention in a state's matrimonial and adoption matters. Applied here, Baker reveals the absence of a federal question, and mandates dismissal.

Plaintiffs additionally contend that the doctrine of abstention is not applicable, because North Carolina's laws on adoption and marriage are clear and require no interpretation. [DE 69 pp 15-

3

Case 1:12-cv-00589-WO-JEP   Document 72   Filed 11/15/13   Page 3 of 13

16]. However, Plaintiffs' adoption issues are "inextricably intertwined" with the N.C. Supreme Court's holding in Boseman. [DE 40, pp 3-4]. It is precisely that type of resuscitation of the domestic matter, adjudicated by a state tribunal, that demands the application of the abstention and *res judicata* doctrines.

Similarly, the U.S. Supreme Court has repeatedly acknowledged that "'[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004) (internal citations omitted). "So strong is our deference to state law in this area that we have recognized a 'domestic relations exception' that 'divests the federal courts of power…'", and renders "… appropriate for the federal courts to decline to hear a case involving 'elements of the domestic relationship'[.]" Id. at 12-13 (internal citations omitted). As such, in the event of differing principles related to marriage and family, the federal government owes due deference to a state's own conceptualizations. Therefore, even if this Court finds that it possesses subject matter jurisdiction over this action, prudential considerations weigh in favor of federal court abstention.

**C. Binding Precedent Mandates Rational Basis Review And The Dismissal Of Plaintiffs' Challenges to North Carolina's Marriage and Adoption Laws, Which Are Not Subject to Further Evidence Gathering and Fact-finding.**

1. Standard For Dismissal

Plaintiffs insist that their averments should be treated as uncontroverted; that they should be accorded the right to develop evidence to substantiate their claims; and, that this Court should be bound by the opinions of other courts.[3] [DE 69, pp 8-9]. Plaintiffs further contend that their

---
[3] The post-Windsor cases cited by Plaintiff are neither authoritative nor binding upon this court. They include: (1) a state court case from Cook County, Illinois, denying in part and granting in part a motion to dismiss challenges to Illinois Constitution, which does not analyze the U.S. Constitution, and is wholly inapplicable to the instant matter, [DE 69-1]; (2) a decision from the

4

allegations of discrimination demand a higher level of scrutiny, [DE 69, pp 13-15], and assert that no legitimate State interest overcomes that alleged discrimination. [DE 69, pp 9-20]. Plaintiffs argue that simply because they asserted them, this Court must treat their allegations as true, and deny the motion to dismiss. Plaintiffs misapprehend the legal underpinnings and the federal standards of Rule 12(b)(6), and ignore the contrary precedent that is binding upon this Court.

Under Rule 12(b)(6), the court must accept as true all factual allegations of a complaint. However, conclusory averments, legal conclusions and unwarranted deduction of fact and law shall not be considered.[4] Plaintiffs' allegations regarding animus toward gay men and lesbians in North Carolina, and the declaration that same-sex couples own a fundamental Constitutional right to marriage and adoption are patent legal conclusions, which the Court should disregard. See fn 4.

Plaintiffs' first amended complaint begs a purely legal question: must this court order North Carolina to amend its definition of marriage to include unions between people of the same gender. The resolution of that legal issue fully resolves the questions posed by the Plaintiffs' ancillary adoption claims. Based on binding precedent, it is respectfully contended that this court should dismiss Plaintiffs' complaint as a matter of law pursuant to Rule 12(b)(6).

2. <u>Plaintiffs' Classifications Based on Sexual Orientation Are Subject to Rational Basis Review, and Require No Evidence Presentation</u>.

Plaintiffs insist that they are members of a suspect class, and that a heightened degree of scrutiny is therefore proper in evaluating their Fourteenth Amendment claims. [DE 40, pp 22-23;

---

Superior Court of New Jersey granting plaintiffs' motion for summary judgment declining to rule upon the federal constitutional issue surrounding same-sex marriage, and instead adjudicating the issues purely on the New Jersey state law grounds, [DE 69-2, pp 51-52]; (3) <u>Obergefell</u> court's grant of a temporary restraining order concerning a notation on a death certificate to a same-sex couple, which emphasized the history of Ohio state decisions and explicitly limited the scope of the decision's applicability "as to these two Plaintiffs only."

[4] . <u>See</u>, <u>e.g.</u>, <u>Randall v. United States</u>, 30 F.3d 518, 522 (4th Cir. 1994) (citing <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993)); <u>Morgan v. Church's Fried Chicken</u>, 829 F2d. 10, 12 (6th Cir. 1987); <u>Wednesday Fair v. United States Postal Serv.</u>, 2013 U.S. Dist. LEXIS 95473 (W.D.N.C. July 9, 2013).

DE 69 12-15]. Plaintiffs' contentions are wholly without merit. Indeed, this court is bound by the opinion of the Fourth Circuit, Thomasson v. Perry, 80 F.3d 915, 928, cert denied by, 519 U.S. 948 (1996), which has held that claims involving sexual orientation are subject to a rational review.

In Thomasson, the Fourth Circuit noted that "…the Supreme Court has made clear that 'respect for the separation of powers' should make courts reluctant to establish new suspect classes," when it refused to treat homosexuals as a suspect classification. Thomasson, 80 F.3d at 928. (internal citations omitted). The Fourth Circuit applied rational basis analysis to a classification based upon homosexuality, and the Supreme Court denied claimant's petition for certiorari to contest the Court's failure to define homosexuals as a suspect class, and otherwise challenge the government's classification as lacking rational basis.[5] Id.

The Fourth Circuit again applied the rational basis of scrutiny to classifications based on sexual orientation in Veney v. Wyche, 293 F.3d 726, 732-34 (4th Cir. 2002) (concluding that those classifications are subject to rational basis review, and upholding prison housing policy which allegedly discriminated based on homosexuality). In yet another decision, the Fourth Circuit defined the classifications that exclusively were subject to higher levels of scrutiny:

> Classifications based on race, national origin, alienage, sex, and illegitimacy must survive heightened scrutiny in order to pass constitutional muster. *All other classifications need only be rationally related to a legitimate state interest*.

Goulart v. Meadows, 345 F.3d 239, 260 (4th Cir. 2003) (internal citations omitted) (emphasis added). Plaintiffs here neither alleged one of the enumerated classifications, nor cited any binding

---

[5] The "Don't Ask, Don't Tell" policy, which was largely upheld by federal courts, was ultimately repealed by the U.S. Congress in 2010. This history exemplifies the need for judiciary to allow the development of a popular consensus through political and legislative processes, rather than impose a preemptive resolution of these evolving issues by courtroom decree.

decisions to compel a heightened level of scrutiny.[6] As Plaintiffs' complaint is predicated on alleged sexual orientation discrimination, this Court is required to review this claim to determine only whether there exists a rational relationship to any plausible, legitimate state interest.

Plaintiffs further insist that they be permitted to present evidence of the alleged discrimination. However, the presentment of evidence to enable judicial fact-finding is inappropriate under a rational basis review:

> To sustain the validity of its policy, the government is not required to provide empirical evidence. "[A] legislative choice is not subject to courtroom factfinding . . ." Rather, "'the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'"

Thomasson, 80 F.3d at 928 (internal citations omitted). Even though legislative choices are often socially divisive, judicial fact-finding is counterproductive, wasteful, and leads to hollow courtroom spectacles that serve only to inflame rather than resolve. See, e.g., Windsor, 133 S.Ct. at fn. 7. (Alito, J., dissenting) (describing the kind of unreliable evidence such trials have produced). For these reasons, the State Defendants' motion to dismiss warrants immediate adjudication.

3. Marriage Statutes and Constitutional Amendment

Plaintiffs assert that their challenge is not an endeavor to seek the right of same-sex couples to marry or adopt a child, but instead, seeks a right to be free from discrimination based on sexual orientation as it relates to parental autonomy, family integrity, and marital status. [DE 69, pp 1-2, 8-9]. This assertion belies Plaintiffs' first amended complaint which avers that Plaintiffs are deprived

---

[6] Plaintiffs' conclusory statement that the Marriage Amendment discriminates on the basis of gender is contrary to the pleaded facts, multiple decisions across the Circuits, and unsupported by any case law in this Circuit or the U.S. Supreme Court. See Sevcik v. Sandoval, 911 F. Supp. 2d 996, 1005 (D. Nev. 2012); Jackson v. Abercrombie, 884 F. Supp. 2d 1065 (D. Haw. 2012). The Constitutional Amendment is not directed toward any particular gender, and does not affect people of any particular gender disparately. "[T]he Loving reciprocal-disability principle would indicate a gender-based distinction in a case where the members of a particular gender were targeted, because it is homosexuals who are the target of the distinction here, the level of scrutiny applicable to sexual-orientation-based distinctions applies." Sevcik, 911 F. Supp. 2d at 1005.

of the right "to marry and the right to apply to adopt the children they are raising[.]" [DE 40, p 5]. Plaintiffs have chosen the framework of the Fourteenth Amendment to address the issue of marriage. To prevail, Plaintiffs must demonstrate that as a result of intentional discrimination affecting a fundamental right, they have been treated differently from others similarly situated, and that the discrimination is not justifiable. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Plaintiffs' claims necessarily fail because same-sex marriage is not a fundamental right.[7] In North Carolina, marriage has never been defined as a union between members of the same gender. A federal court decree that marriage should include same-sex couples would result in the spontaneous creation of a new fundamental right, and excuse the necessary, deliberative, and often difficult legislative processes used to establish such principles. Until that process has been completed, Plaintiffs' should not be permitted to demand the conclusion that the fundamental right to marry includes marriages between same-sex couples. [DE 69, pp 2, 9-11]. Plaintiffs' argument is simply unsupported by the Fourteenth Amendment's framework which presupposes a narrow definition premised upon a historical and well-established fundamental principle.

Plaintiffs' factual allegations also fail to demonstrate that North Carolina's marriage laws are designed to adversely impact same-sex couples. Instead, North Carolina's laws affect same-sex partnerships, civil unions, multi-partner arrangements, and domestic partnerships that have long

---

[7] Plaintiffs' reliance upon Loving v. Virginia, 388 U.S. 1 (1967), in which the Supreme Court struck Virginia's anti-miscegenation law, is unpersuasive for several reasons. [DE 69]. First, Baker v. Nelson, decided 5 years after Loving, refused to grant the type of legal protections afforded to inter-racial couples to same-sex marriage proponents, or even to consider a same-sex marriage challenge as a federal issue. Secondly unlike sexual orientation classification, race is a suspect classification, subject to strict scrutiny. Finally, the Supreme Court in Loving specifically grounded its decision on the long recognized right to marry by members of opposite sex, which it found was being criminalized by invidiously discriminatory laws spawned purely by racist motivations.

Case 1:12-cv-00589-WO-JEP   Document 72   Filed 11/15/13   Page 8 of 13

served as a substitute for marriage[8]; Plaintiffs are not disparately impacted. Assuming, *arguendo*, that North Carolina's marriage laws treat gay men and lesbians differently, Plaintiffs fail to sufficiently plead that those laws are irrational. North Carolina's laws are not so unusual or unduly broad that they are "inexplicable by anything but animus" towards same-sex couples. See Romer v. Evans, 517 U.S.620, 632 (1996). Moreover, Plaintiffs do not contend that Amendment One amounts to an elimination of an existing right, as was at issue in Romer and in the case involving California's Proposition 8. Instead, the definition of marriage is emblematic of the State's long established law, tradition, and marriage practices. Plaintiffs' reliance upon isolated statements by several members of the public falls short of the requisite showing of animus on the part of North Carolinians, and it has no place in the analysis of North Carolina's adoption laws.

Plaintiffs' first amended complaint also fails to overcome the presumptions commensurate to a rational basis analysis. Indeed, Justice O'Connor once explained that the preservation of traditional, heterosexual institution of marriage is a legitimate state interest in its own right:

> Texas cannot assert *any legitimate state interest here, such as national security or preserving the traditional institution of marriage*. Unlike the moral disapproval of same-sex relations-- the asserted state interest in this case-- *other reasons exist to promote the institution of marriage beyond mere moral disapproval* of an excluded group.

Lawrence v. Texas, 539 U.S. 558, 585 (2003) (O'Connor, J., concurring) (emphasis added). Plaintiffs do not contradict the conceivable State interests in the challenged laws, in light of the numerous legitimate reasons warranting preservation of the historical definition of marriage. [See DE 66, pp 16-17]

---

[8] Maxine Eichner, et al., Potential Legal Impact of the Proposed Domestic Legal Union Amendment to the North Carolina Constitution (November 8, 2011), available at http://www.law.unc.edu/documents/faculty/marriageamendment/dlureportnov8.pdf; Lynn R. Buzzard, et al., The Meaning and Potential Legal Effects of North Carolina's Proposed Marriage Amendment, The Selected Works of E. Gregory Wallace, available at: http://works.bepress.com/gregory_wallace/13.

4. <u>Adoption Statutes</u>

Plaintiffs argue that their challenge to North Carolina's adoption laws is not an assertion of a fundamental right to adopt, [DE 69, p 8], and attempt to disguise their claim by making references to "family integrity" and "parental autonomy." Yet, Plaintiffs admit that they seek "the right to apply to adopt the children they are raising", repeatedly describe the right as the right to "second parent adoption," and define the state's alleged discrimination as "preventing" or "banning" adoptions. [DE 40 pp 5, 14-15, 22]. Plaintiffs do not clarify how the right to family integrity and parental autonomy applies to individuals who are not biological or *de jure* parents of the children they seek to adopt. Plaintiffs further fail to plea sufficient facts to support the contention that the State's adoption laws classify by, or were enacted to harm people by virtue of, their sexual orientation. In fact, North Carolina's adoption laws are facially neutral and require no further Fourteenth Amendment review.

Had Plaintiffs sufficiently alleged such discrimination, classifications based on sexual orientation are reviewed only for rationality. <u>See</u> <u>supra</u>, pp 6-7. The State's interests in enacting its adoption structure, and all other conceivable interests for preferring adoptions by married couples, are legitimate, rational, and compelling. <u>See</u> N.C. Gen. Stat. § 48-1-100 (2013); 1995 N.C. Sess. Laws 457. Among those interests are the advancement of the welfare of minors, protection of biological parents, discouragement of child trafficking, establishment of a clear adoption process, promotion of integrity, and finality of adoptions. <u>Id</u>. Plaintiffs have clearly failed to make the requisite showing that North Carolina's adoption statutes are irrational.

**IV. Conclusion.**

For the reasons set out herein, and in the State Defendants' memorandum of law, Plaintiffs' first amended complaint should be dismissed with prejudice.

10

Respectfully submitted, this the 15th day of November, 2013.

ROY COOPER
North Carolina Attorney General


/s/ Mabel Y. Bullock
Mabel Y. Bullock
Special Deputy Attorney General
N.C. State Bar No. 10592
North Carolina Department of Justice
P.O. Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6864
Facsimile: (919) 716-6758
Email: mbullock@ncdoj.gov

/s/ Amar Majmundar
Amar Majmundar
Special Deputy Attorney General
North Carolina State Bar No. 24668
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6821
Facsimile: (919) 716-6759
Email: amajmundar@ncdoj.gov

/s/ Olga E. Vysotskaya de Brito
Olga E. Vysotskaya de Brito,
Assistant Attorney General
North Carolina State Bar No. 31846
North Carolina Department of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-0185
Facsimile: (919) 716-6759
Email: ovysotskaya@ncdoj.gov

/s/ Charles Whitehead
Charles G. Whitehead
Special Deputy Attorney General

11

North Carolina State Bar No. 39222
N.C. Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Telephone: (919) 716-6840
Facsimile: (919) 716-6758
Email: cwhitehead@ncdoj.gov

12

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2013, I electronically filed the foregoing **Reply Brief In Support Of The State Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<pre>
                                /s/ Olga E. Vysotskaya de Brito
                                Olga E. Vysotskaya de Brito
                                Assistant Attorney General
</pre>