# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MARCIE FISHER-BORNE, *et al.*,   :

      Plaintiffs,  :

   v.      :

JOHN W. SMITH, *et al.*,    :  CIVIL ACTION NO. 1:12-cv-00589

      Defendants. :

           :

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELLEN W. GERBER, *et al.*,   :

      Plaintiffs,  :

   v.      :

ROY COOPER, *et al.*,    :  CIVIL ACTION NO. 1:14-cv-00299

      Defendants. :

           :

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES UNDER 42 U.S.C. § 1988

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

I. INTRODUCTION ..................................................................................................... 1

II. HISTORY OF THE CASE ....................................................................................... 2

    A.    Motions to Dismiss and Requests for Preliminary Relief. ............................... 3

    B.    The Rates Requested Are Modest and Certainly Reasonable. ......................... 4

    C.    Stay Litigation and the Fourth Circuit's *Bostic* Decision ................................ 5

    D.    Legislative Intervention and Continued Litigation .......................................... 6

    E.    Appeal by the Legislative Intervenors ............................................................. 7

III. PLAINTIFFS ARE ENTITLED TO A FEE AWARD AS THE PREVAILING
PARTY .................................................................................................................... 8

IV. THE LODESTAR CALCULATION IS APPROPRIATE TO § 1988
DETERMINATIONS .............................................................................................. 10

    A.    The Rates Requested Are Modest and Certainly Reasonable. ....................... 11

    B.    The Hours Plaintiffs' Counsel Devoted Are Reasonable. .............................. 13

    C.    The *Barber/Johnson* Factors Confirm the Reasonableness of the Fees

        Requested. ...................................................................................................... 15

V. APPORTIONMENT OF FEES LIABILITY. ......................................................... 19

VI. CONCLUSION ...................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*ABC, Inc. v. Primetime 24*,
67 F. Supp. 558 (M.D.N.C. 1999) ...................................................................................14

*Barber v. Kimbrell's, Inc.,*
577 F.2d 216 (4th Cir. 1978) ...............................................................................9, 11, 15

*Bostic v. Schaefer*,
760 F.3d 352 (4th Cir. 2014) .........................................................................................16

*Bills v. Hodges*,
628 F.2d 844 (4th Cir. 1980)..........................................................................................10

*Blum v. Stenson,*
465 U.S. 886 (1984) .........................................................................................................8

*Certain v. Potter*,
330 F. Supp. 2d 576 (M.D.N.C. 2004) ........................................................................ 11

*City of Riverside v. Rivera*,
477 U.S. 561 (1986) .......................................................................................................10

*Colonial Williamsburg Found. v. Kittinger Co.*,
38 F.3d 133 (4th Cir. 1994).....................................................................................11, 15

*Daly v. Hill*,
790 F.2d 1071 (4th Cir. 1986) .................................................................................10, 11

*Farrar v. Hobby,*
506 U.S. 103 (1992) ........................................................................................................ 8

*Hendrickson v. Branstad,*
934 F.2d 158 (8th Cir. 1991) .........................................................................................20

*Hudson v. Pittsylvania Cty, Va.*,
774 F.3d 231 (4th Cir. 2014)......................................................................................... 10

*Hyatt v. Apfel*,
195 F.3d 188 (4th Cir. 1999).........................................................................................10

*Hymes v. Harnett Cty. Bd. of Educ.*,
664 F.2d 410 (4th Cir. 1981) ......................................................................................... 10

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (1974) ...................................................................................................11, 15

*Jones v. Southpeak Interactive Corp. of Delaware*,
777 F.3d 658 (4th Cir. 2015) ................................................................................. 19

*Lefemine* v. *Wideman*,
758 F.3d 551 (4th Cir. 2014) ...................................................................................9

*Mammano v. Pittston Co.*,
792 F.2d 1242 (4th Cir. 1986) ..................................................................................9

*McAfee v. Boczar*,
738 F.3d 81 (4th Cir. 2013) ..............................................................................12, 18

*McGee v. Cole*, No. CIV.A. 3:13-24068,
2015 WL 4366161 (S.D.W. Va. July 16, 2015) ...............................................13, 18

*Mercer v. Duke Univ.*,
301 F.Supp. 2d 454 (M.D.N.C. 2004) ...........................................................10

*Mercer v. Duke Univ.*,
401 F.3d 199 (4th Cir. 2005) ...........................................................................8, 10

*Nat'l Wildlife Fed'n v. Hanson*,
859 F.2d 313 (4th Cir. 1988) ..................................................................................12

*Newman v. Piggie Park Enter., Inc.*,
390 U.S. 400 (1968) ..................................................................................................9

*Obergefell v. Hodges*,
135 S.Ct. 2584 (2015) ...........................................................................................16

*Spell v. McDaniel*,
824 F.2d 1380 (4th Cir.1987) .................................................................................11

*Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*,
489 U.S. 782 (1989) ..................................................................................................8

*Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*,
517 F.2d 1141 (4th Cir. 1975) ...........................................................................9, 10

*Trudrung v. Trudrung*, No. 1:10CV73,
2010 WL 2867593 (M.D.N.C. July 21, 2010) ...........................................14

iii

**Statutes**

42 U.S.C. § 1988........................................................................................................................14

**Other Authorities**

Anne Blythe, *Gay couples in NC seek legal adoption as marriages continue*, THE NEWS
AND OBSERVER, http://www.newsobserver.com/news/politics-government /state-
politics/article10094846.html (last visited October 13, 2015)...........................................18

# I. INTRODUCTION

Plaintiffs in these cases are same-sex couples and their children who sought equal rights to marriage, marital recognition, and parental recognition in this State. Following complete vindication of the rights they sought by this Court, the Fourth Circuit, and subsequently by the United States Supreme Court, plaintiffs hereby respectfully petition the Court for an award of reasonable attorneys' fees as a part of the final judgment the Court entered in this case. Specifically, plaintiffs seek $311,196.00 in attorney's fees and $6,612.20 in expenses for the 1053 hours expended in this case in vindicating plaintiffs' rights under the Due Process and Equal Protection clauses of the U.S. Constitution, pursuant to Federal Rule of Civil Procedure 54(d), M.D.N.C. Local Rules 54.1 & 54.2,[1] and 42 U.S.C. §1988.

The amount for which plaintiffs now seek reimbursement represents a fraction of the total hours expended by counsel for plaintiffs in pursuing this litigation, partly because the present request for fees does not include the wide range of necessary tasks that counsel undertook in connection with these representations. For example, as described below, plaintiffs are not seeking any reimbursement for counsel's significant efforts in connection with the original complaint in the *Fisher-Borne* action and related dismissal briefing, including significant legal research and factual development that accompanied those pleadings. Other efforts undertaken by counsel for which limited or no reimbursement is sought include interactions with state officials regarding the implications of gay-rights decisions on plaintiffs,

---

[1] In accordance with Local Rule 54.2, plaintiffs consulted with counsel for the North Carolina Department of Justice and counsel for Thom Tillis, then-Speaker of the North Carolina House of Representatives, and Phil Berger, President Pro Tempore of the North Carolina Senate. As of the date of this motion the parties have been unable to reach an agreement in regard to the fee award. A written statement of the consultation is attached as Exhibit A. A full listing of Plaintiffs' counsels' hours is attached as Exhibit B.

and consideration given to potential *amicus* filings in the United States Supreme Court while these actions were stayed.

Moreover, from the outset, plaintiffs were pursuing an area of law that was far from settled. Plaintiffs sought a declaration of their right to marry (or have out-of-state marriages recognized) a full year before the Fourth Circuit decided the issue in *Bostic v. Shaeffer*. The original *Fisher-Borne* complaint concerning second-parent adoption was filed a year before the Supreme Court struck down Section 3 of the Defense of Marriage Act in *United States v. Windsor*. Finally, as described below, in addition to the many hours that plaintiffs have voluntarily eliminated from this request, plaintiffs have also narrowed their request to seek reimbursement of fees for only the core timekeepers most intensively involved in the preparation and review of plaintiffs' pleadings and filings in these actions.[2]

## II. HISTORY OF THE CASE

On June 13, 2012, six North Carolina families headed by lesbian or gay parents filed a complaint in the United States District Court for the Middle District of North Carolina. Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. June 13, 2012), Docket No. 1. The complaint alleged that North Carolina's refusal to allow both members of the couple to be legal parents of their children—even those married in other States—violated the couples' and their children's Due Process and Equal Protection rights under the United States Constitution.

---

[2] On December 16, 2014, the Court granted Plaintiffs' Motions to Toll the Deadline for Attorneys' Fees (Order, *Gerber v. Cooper*, 14-cv-299 (M.D.N.C. Dec. 16, 2014), Docket No. 104; Order, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Dec. 16, 2014), Docket No. 149) stating "Plaintiffs' motion to award statutory attorneys' fees . . . is due 60 days after the conclusion of any and all appeals associated with this case. *See Id*.

*Motions to Dismiss and Requests for Preliminary Relief*

Both sides advocated zealously for their clients, with the defendants mounting facial challenges to the complaints and certain plaintiffs seeking preliminary relief.

On August 6, 2012, defendants filed a Motion to Dismiss challenging plaintiffs' standing and arguing that the complaint failed to state a cognizable claim. Mem. in Supp. of Def.'s Mot. to Dismiss Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Aug. 6, 2012), Docket No. 28. The parties fully briefed that motion, which delved directly into the core substantive constitutional questions, as well as technical federal civil procedure issues (standing and *Buford* abstention), over the balance of 2012 and into 2013, providing the Court with suggestions of subsequently decided authority as other federal courts grappled with the same basic issues in a rapidly evolving legal environment. *See, e.g.*, Pl.'s Suggestion of Subsequently Decided Authority, Ex. 1, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Oct. 19, 2012), Docket No. 35. As noted *infra*, although plaintiffs expended significant time, effort, and resources in this preliminary phase of the case, plaintiffs have voluntarily elected not to seek attorneys' fees for the time spent during this phase of the case.

On July 19, 2013, plaintiffs amended the original complaint to bring an additional challenge to the constitutionality of North Carolina's exclusion of same-sex couples from marriage. First Amended Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. July 19, 2013), Docket No. 40. Both Amendment One to North Carolina's Constitution and state statutory law provided that marriage was a legal joining only of "one man and one woman," thereby excluding gay and lesbian North Carolinians from the institution and all the legal rights and benefits that the federal and state governments confer on lawfully wedded spouses. The amended complaint expanded the scope of the original complaint, but it still sought the

3

vindication of the rights of same-sex partners to a parent-child relationship equal to that of different-sex parents.

The defendants also moved to dismiss the amended complaint. Mot. to Dismiss Pl.'s Amended Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. . 10, 2013), Docket No. 63; Mot. to Dismiss Pl's First Amended Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Sept. 11, 2013), Docket No. 65. The parties again fully briefed the facial challenge to the amended complaint, again calling to the Court's attention subsequently decided authority that bore on the issues. Pl.'s Suggestion of Subsequently Decided Authority, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Nov. 11 2013), Docket No. 73; Pl.'s Suggestion of Subsequently Decided Authority, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Jan. 21, 2014), Docket No. 74.

On April 9, 2014, nearly two years after *Fisher-Borne* was filed, plaintiffs Megan Parker, Shana Carignan and their son J.C. filed a motion for a preliminary injunction asking this Court to order the state to recognize their marriage and parental relationships, in order to prevent further harm to their son's growth and development due to the delays associated with litigation. Mot. for Prelim. Inj. and Mem. in Supp., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Apr. 9, 2014), Docket Nos. 75, 76. That motion again required the parties to brief the constitutional merits, this time in conjunction with briefing preliminary-injunction issues.

The Plaintiffs in *Gerber v. Cooper* brought their action on April 9, 2014, Compl., *Gerber v. Cooper*, No. 14-cv-299, (M.D.N.C. Apr. 9, 2014), Docket No. 1, and along with the Complaint, filed a motion for a preliminary injunction, asking the district court to order the State to recognize the respondents' marriages and parental relationships. Like the plaintiffs in *Fisher-Borne*, the *Gerber* plaintiffs sought a right to marry or have their out-of-state marriages

4

recognized. Unlike the *Fisher-Borne* plaintiffs, however, the plaintiffs in *Gerber* faced imminent and potentially irreparable harm due to the fact that one partner in each couple faced a serious medical condition or life-threatening illness. Mot. for Prelim. Inj. and Mem. in Supp., *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. Apr. 9, 2014) Docket Nos. 3,4. The Attorney General's Office also moved to dismiss the *Gerber* complaint on May 5, 2014. State Def.'s Mot. to Dismiss Pl.'s Compl., *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. May 5, 2014), Docket No. 37. In *Gerber*, too, the parties fully briefed defendant's motion to dismiss and plaintiffs' request for preliminary relief, and they provided subsequently decided authority to the court. Mem. in Supp. and State Def.'s Mot. to Dismiss Pl.'s Compl., *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. May 5 and 6, 2014), Docket Nos. 36, 37; Reply to Resp. in Opp. To Mot. to Stay Proceedings, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. May 22, 2014), Docket No. 45; Suggestion of Subsequently Decided Authority, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. May 21, 2014), Docket Nos. 43, 44.

### *Stay Litigation and the Fourth Circuit's* **Bostic** *Decision*

The North Carolina Attorney General moved to stay both proceedings. Mot. to Stay Proceedings, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. Apr. 17, 2014), Docket No. 23; Def.'s Mot. to Stay Proceedings, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. April 11, 2014), Docket No. 85. Plaintiffs, eager for their day in court, and cognizant of the continuing injuries being suffered by their families, resisted the stays and briefed those issues thoroughly. Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. and in Opp. To Def.'s Mot. to Stay, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. May 5, 2014), Docket No. 36; Consolidated Mem. in Supp. of Mot. for Prelim. Inj., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. May 5, 2014), Docket No. 91. On June 2, 2014, Magistrate Judge Peake recommended that the cases be

stayed, and the Court agreed. R. by Magis. J. Peake, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. June 2, 2014), Docket No. 49; R. by Magis. J. Peake, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. June 2, 2012), Docket No. 97.

While the case was stayed, the Fourth Circuit Court of Appeals decided *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), holding that Virginia's marriage laws—which mirrored North Carolina's—were unconstitutional, violating both the Equal Protection and Due Process Clauses of the United States Constitution. The Supreme Court stayed issuance of *Bostic's* mandate pending its decision on a petition for *certiorari* in that case. *McQuigg* v. *Bostic*, 135 S. Ct. 32 (2014). The Supreme Court denied the petition for *certiorari* on October 8, 2014.

Almost immediately after the denial of *certiorari* in *Bostic*, this Court lifted the stay, directed defendants to file answers to the respective complaints, and invited plaintiffs to file any additional motions (without briefing) that they deemed necessary to bring the case to conclusion in light of the parties' agreement that *Bostic* required entry of judgment in favor of plaintiffs. Order, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Oct. 8, 2014), Docket No. 71. The case then appeared to be on the verge of resolution, but it was not.

### Legislative Intervention and Continued Litigation

On October 9, 2014—two years and four months after *Fisher-Borne* was filed—Thom Tillis, then-Speaker of the North Carolina House of Representatives, and Phil Berger, President Pro Tempore of the North Carolina Senate ("Intervenors"), moved to intervene as defendants in both cases. Mot. to Intervene, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. Oct. 9, 2014), Docket No. 75. The plaintiff families, eager to avoid further delay of a final resolution that appeared to be so close, resisted and briefed the intervention, analyzing related merits issues to illustrate the futility of the new intervenors' efforts. Resp., *Gerber v.* Cooper, No. 14-cv-299

(M.D.N.C. Oct. 9, 2014), Docket No. 77. The district court, on October 14, 2014, granted leave to intervene but, in light of the Fourth Circuit's binding precedent in *Bostic*, also granted plaintiffs' motions for judgment on the pleadings, declaring that North Carolina's marriage laws were unconstitutional and enjoining their enforcement. Order, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. Oct. 14, 2014), Docket No. 90; Order, *Gerber v. Cooper*, No. 14-cv-299 (M.D.N.C. Oct. 14, 2014), Docket No. 91.

### *Appeal by the Legislative Intervenors*

This Court's decision did not, unfortunately, end the litigation. Intervenors appealed the judgments, (Notice of Appeal, *Gerber v. Cooper*, No. 14-cv-299 (Nov. 11, 2014), Docket No. 96.), and plaintiffs therefore filed a cross-appeal challenging the order granting the intervention. Pl.'s Notice of Cross-Appeal, *Fisher-Borne v. Smith*, No. 14-cv-299 (M.D.N.C. Nov. 11, 2014), Docket No. 144. The Fourth Circuit consolidated the two cases, and then further consolidated them with *General Synod v. Cooper*, No. 14-2225 (4th Cir. filed Nov. 6, 2014), an appeal from a similar case from the Western District of North Carolina, which had also followed *Bostic* and declared North Carolina's marriage laws unconstitutional.[3]

The appeal was held in abeyance pending the Supreme Court's decision in *Obergefell v. Hodges*. USCA Order, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Feb. 10, 2015), Docket No. 150. That abeyance, however, did not bring a pause to the legislative intervenors' litigation efforts. Prior to briefing, argument or decision by the Fourth Circuit, those intervenors sought *certiorari* review by the Supreme Court, and the parties fully briefed the petition for

---

[3] The matter before the Fourth Circuit included five consolidated appeals from three different district court cases: *Gerber v. Cooper*, No. 1:14-cv-00299 (M.D.N.C.), *Gen. Synod of the United Church of Christ v. Resigner*, No. 3:14-cv-213 (W.D.N.C.) and *Fisher-Borne v. Smith*, No. 1:12-cv-00589 (M.D.N.C.). Intervenors were not permitted to intervene in the *General Synod* matter.

7

*certiorari. Pet for Writ of Cert.*, *Berger et al. v. Fisher-Borne*, No. 14-823, Jan. 9, 2015; *Brief in Op., Berger et al. v. Fisher-Borne*, No. 14-823, April 17, 2015. The Supreme Court denied the petition for *certiorari*. Order List, 576 U.S. ___ (June 30, 2015). Simultaneously, in its ruling in *Obergefell*, the Supreme Court held that exclusion of same-sex couples from the rights and privileges of marriage violated the Due Process and Equal Protection clauses of the U.S. Constitution, thus vindicating the rights of the *Fisher-Borne* and *Gerber* plaintiffs. Finally, after the Supreme Court's ruling in *Obergefell*, the Fourth Circuit issued a mandate on August 12, 2015 dismissing the intervenors' appeals.

The prevailing plaintiffs now seek reasonable attorney's fees in the amount of $311,196.00 representing a fraction of the hours spent by their counsel in litigating this matter over nearly two and a half years.

### III. PLAINTIFFS ARE ENTITLED TO A FEE AWARD AS THE PREVAILING PARTY

Title 42, Section 1988(b) of the United States Code provides for the award of reasonable attorney's fees to parties that prevail in an action seeking relief under the Civil Rights Act of 1964. To "prevail" for the purposes of § 1988(b), the plaintiff need not succeed on *all* claims. Rather, a plaintiff need only succeed on *any significant issue*, by winning some considerable portion of the relief sought. *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989). In sum, "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Mercer v. Duke Univ.*, 401 F.3d 199, 203 (4th Cir. 2005) (quoting *Farrar v. Hobby,* 506 U.S. 103, 111–12 (1992)).

Plaintiffs here clearly prevailed on their claims to marriage for same-sex couples, and as a direct result, on establishing parental rights for same-sex couples and their children. They won

8

a favorable and comprehensive judgment from this Court. The judgment changed the way the State of North Carolina treats same-sex couples living in the State, recognizing the rights of unmarried couples to marry, and recognizing the legal status of couples already married in other states, and thereby vindicating all of those couples' parental rights. The Court's judgment, therefore, awarded the plaintiffs the relief they sought. *See* Compl., *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. June 13, 2012), Docket No. 1.

It is well established that district courts[4] must grant fees to parties who succeed in enforcing the laws enumerated in § 1988(b), absent exceptional circumstances. *See, e.g., Lefemine* v. *Wideman*, 758 F.3d 551, 555 (4th Cir. 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1933)). In *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402 (1968), for example, the Supreme Court described civil rights plaintiffs as "private attorney[s] general" under § 1988(b), who pursue relief not only for themselves but for other citizens similarly situated. *See also, e.g., Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1147 (4th Cir. 1975) (citing *Newman*). Congress intended the statute, according to the Supreme Court's reasoning, to facilitate meritorious civil rights litigation and to reduce some of the financial burdens facing civil rights plaintiffs, who often litigate claims for which no monetary award is available.

The Civil Rights Act does not distinguish between legal work done *pro bono publico* and legal work done for profit, and it is well established that fee petitions based on the work of both types of lawyers are judged by the same standard. *Mammano v. Pittston Co.*, 792 F.2d 1242, 1245 (4th Cir. 1986). As the Court of Appeals for the Fourth Circuit explained 40 years ago,

---

[4] The District Court determines fees in the matter for services rendered both before it and on appeal. *See Barber v. Kimbrel's, Inc.*, 577 F.2d 216, 226-27 (4th Cir. 1978) (remanding with instruction to district court to "compensate counsel for their services in this appeal and for further proceedings in the district court").

> Litigation to secure the full measure of the law's protection has frequently depended on the exertions of organizations dedicated to the enforcement of the Civil Rights Acts. Consequently, when an allowance of attorneys' fees is justified, it should be measured by the reasonable value of the lawyer's services. It should not be diminished because the attorney has agreed to contribute the money, in whole or in part, to a civil rights organization whose aims have stimulated him to work voluntarily.

*Tillman*, 517 F.2d at 1148 (4th Cir. 1975) (awarding fees for work of ACLU and volunteer attorneys). *See also Bills v. Hodges*, 628 F.2d 844, 847 (4th Cir. 1980).

The time spent by counsel in preparing this fee petition is itself compensable. *See Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986) (citing *Hymes v. Harnett Cty. Bd. of Educ.*, 664 F.2d 410, 413 (4th Cir. 1981)). *See also Mercer v. Duke Univ.*, 301 F.Supp. 2d 454, 469 (M.D.N.C. 2004), *aff'd* 401 F.3d 199 (4th Cir. 2005).[5]

## IV. THE LODESTAR CALCULATION IS APPROPRIATE TO § 1988 DETERMINATIONS

Courts have recognized that the "reasonable fee" Congress envisaged in § 1988 is the "lodestar" figure. The district court in § 1988 proceedings "must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Hudson v. Pittsylvania Cty, Va.*, 774 F.3d 231, 237 (4th Cir. 2014). The lodestar "is presumed to be the reasonable fee contemplated [by the statute.]" *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). Once the lodestar amount is calculated, the Court has discretion to adjust it upward or downward to account for unique results or circumstances. *See Hyatt v. Apfel*, 195 F.3d 188, 192 (4th Cir. 1999) (upholding 33% upward adjustment of lodestar figure to account for exceptional results in case where government defendants "resisted… each step of the way").

In the Fourth Circuit, the *Barber* or *Johnson* factors also guide the reasonableness of a fee

---

[5] Plaintiffs submit information regarding the time spent preparing and litigating this Motion up to the date of filing. Plaintiffs seek leave to supplement the record with information on the time spent after this motion if necessary.

determination.

> These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978), citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (1974). "The proper point at which the *Johnson* factors are to be considered is in determining the reasonable rate and the reasonable hours." *Daly v. Hill*, 790 F.2d 1071, 1078 (4th Cir. 1986).

### A. *The Rates Requested Are Modest and Certainly Reasonable*

"[T]he prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award" is the reasonable rate by which a § 1988 fee award is calculated. *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir.1987) (citing, inter alia, *Blum v. Stenson,* 465 U.S. 886, 895-96 & n. 11 (1984)). *See also Certain v. Potter*, 330 F. Supp. 2d 576, 588 (M.D.N.C. 2004).

> The prevailing market rate may be established through affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market.

*Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir. 1987).

Plaintiffs have followed the Fourth Circuit's guidance by providing the Court with declarations establishing the reasonableness of the rates sought. Declaration of Robert Elliot (Ex. C); Declaration of Mark Sigmon (Ex. D). Plaintiffs' outside counsel normally charge clients

significantly *higher* rates than the rates at which plaintiffs seek fees here. *See* Declaration of Jonathan Sasser (Ex. E); Declaration of Garrad Benney (Ex. F); Declaration of Christopher Brook (Ex. G); Declaration of Jeremy Falcone (Ex. H); Declaration of Amy Richardson (Ex. I); Declaration of Patrick O'Donnell (Ex. J).[6] Nevertheless, plaintiffs have unilaterally reduced the rate for the fees they seek to rates much *lower* than those customarily charged by the non-ACLU attorneys in this matter. In particular, plaintiffs here seek fees at the following hourly rates:

| Kerri-Ann Limbeek | $220.00 |
| Christopher Brook | $250.00 |
| Jeremy Falcone | $287.50 |
| W. Rudolph Kleysteuber | $290.00 |
| Jonathan Sasser | $430.00 |
| Garrard R. Beeney | $440.00[7] |

Declarations by attorneys familiar with the North Carolina[8] legal market confirm the reasonableness of the rates sought. *See* Exs. C and D. Notably, the rates sought are lower than those upheld by the Fourth Circuit in another recent civil rights case. *See McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), *as amended* (Jan. 23, 2014) (upholding district court finding that lead counsel rate of $585 per hour and senior associate rate of $365 per hour are reasonable in a § 1983

---

[6] The declarations provide descriptions of the tasks undertaken by each attorney. Except where except where a notation indicates that an entry has been edited for privilege, these descriptions are representative of the level of detail submitted to typical clients. Plaintiffs will provide unedited entries for the Court's inspection *in camera* upon request.

[7] Plaintiffs seek $287 for Amy Richardson and $370 for Patrick O'Donnell for their work on the Motion for Fees.

[8] To avoid any question of the reasonableness of the rates sought, plaintiffs seek reimbursement at rates that are *below* reasonable rates for the *North Carolina* market. Governing law, however, allows rates from other markets to be considered. Where it is reasonable to select counsel from another locality to represent them, rates from that locality may reasonably be used in the lodestar calculation. *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317-18 (4th Cir. 1988). Should the Court nevertheless find the rates sought to be above relevant North Carolina rates, it should find the rates of the Sullivan and Cromwell lawyers to be reasonable based on counsel's home-market rates, as illustrated by the Beeney Declaration.

12

case). They also compare favorably to those awarded in a recent and procedurally very analogous same-sex marriage case in another district court. *McGee v. Cole*, No. CIV.A. 3:13-24068, 2015 WL 4366161, at *6-7 (S.D.W. Va. July 16, 2015) (approving rates ranging from $205 per hour for a very junior local counsel to $500 per hour for the "experienced and seasoned litigator" managing the case, with other attorneys approved at hourly rates of $325, $300, $275, $250, and $225).

### B. The Hours Plaintiffs' Counsel Devoted Are Reasonable

Although plaintiffs' complete vindication entitles them to a complete attorney's fee award, and even justifies an adjustment upwards to reflect extraordinary results, plaintiffs here seek much less. Plaintiffs have exercised billing judgment by writing off many hours of work, both on the first phase of the *Fisher-Borne* case and throughout later phases, and have also excluded from their request the work performed by several timekeepers whose role was less active, focusing on the core timekeepers who contributed the most time to the matter. In terms of the first phase of the *Fisher-Borne* case, Plaintiffs have opted to write off all of their counsels' time prior to July 19, 2013. Although the work prior to July 19, 2013 was necessary and laid the groundwork for the ultimately successful amended complaint, Plaintiffs, have elected to seek fees only from the date of filing of the amended complaint in that case. Work conducted during this initial phase (for which no reimbursement is sought) included interviews with plaintiffs, significant consideration and research surrounding strategy, many hours devoted to the preparation and filing of the original complaint, and many hours devoted to briefing the state's original motion to dismiss.

The complex nature of this constitutional civil rights litigation required the devotion of substantial effort. Not only are the legal issues under the Equal Protection and Due Process clauses complex in their own right, but the procedural and related strategic issues distinguished the case

13

even more even from average complex federal litigation. And plaintiffs had to litigate these issues in a variety of procedural contexts: Rule 12(b) motions on the original and revised complaints, requests for preliminary relief, and stay requests, in both the district and appellate courts, culminating in *certiorari* briefing at the Supreme Court. *See infra* § II. Over the life of the case, first the Fourth Circuit and then the Supreme Court issued landmark rulings on the core issues, and several other federal courts with them, presenting the Court and the parties with rapidly evolving law. The issues presented in this case were at least as complex as others in which the novelty and complexity of the case were found to support the reasonableness of a fee award. *Cf. Trudrung v. Trudrung*, No. 1:10CV73, 2010 WL 2867593, at *3 (M.D.N.C. July 21, 2010); *ABC, Inc. v. Primetime 24*, 67 F. Supp. 2d 558, 565 (M.D.N.C. 1999) *aff'd*, 232 F.3d 886 (4th Cir. 2000).

As noted *supra* in Section II, the plaintiffs' original functional adversary, the North Carolina Attorney General, fought the case vigorously on the merits, attempting to have each complaint dismissed, resisting the request for preliminary relief, and seeking to have the case stayed. Of course, counsel for plaintiffs diligently opposed defense counsel on each.

But the legislative intervenors employed a uniquely aggressive approach to the litigation that increased the litigation burden and the amount of this fee petition, after the ultimate outcome was clear. They appealed to the Fourth Circuit despite that court's controlling decision in *Bostic*. The Intervenor of N.C. Att'y Gen's. Resp. to the Ct's. Oct. 10, 2014 Order, *Fisher-Borne v. Smith*, No. 12-cv-00589, (4th Cir. Oct 13, 2014) (14-2278). They then sought *certiorari* review by the Supreme Court while the case remained pending before the Fourth Circuit. *See* Denial of Cert, *Smith*, No. 12-cv-00589, (4th Cir. Oct 14, 2014). They even opposed plaintiffs' motion to remand the matter to this Court for determination of fees. Resp. to Mot. for Remand, *Fisher-Borne v. Smith*, No. 12-cv-00589 (4th Cir. July 21, 2015), Docket No. 46 (14-2278) (opposing plaintiffs'

request to remand for this Court for fee determination). Plaintiffs' counsel had to devote substantial hours responding to all of these efforts.

### C. The Barber/Johnson *Factors Confirm the Reasonableness of the Fees Requested*

An application of the factors first enunciated by the Fifth Circuit in *Johnson* and adopted by the Fourth Circuit in *Barber* confirms the reasonableness of the fee petition at issue. *See Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir. 1978), citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[9]

*The time and labor expended (1st factor).* Plaintiffs' fee petition seeks reimbursement only on the 1053 hours expended by the core attorneys, after substantial deductions to ensure the reasonableness of the request. Those hours represent a very substantial devotion of time and labor. The time and labor actually expended is certainly proportionate to the fee sought. An award of $ 311,196 for 1,053 hours sought yields an average rate of approximately $296 for the hours on which fees are sought.[10] This cannot be argued to constitute a windfall by any yardstick.

And the work performed by plaintiffs' counsel was made necessary not just by the novelty of the legal questions presented but by the unusual procedural history. Until the Court of Appeals for the Fourth Circuit made its ruling in *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014), the Attorney General of North Carolina was plaintiffs' only opponent. This was, of course, the

---

[9] Some of the factors, particularly the attorney's expectations at the outset of the litigation (6th factor) and the time limitations imposed by the client or circumstances (7th), and the nature and length of the professional relationship between attorney and client (11th), do not appear to have any significant role under the circumstances of this case and are therefore not addressed here. As noted *supra* at 11, not every *Barber/Johnson* factor necessarily applies in every case. *See Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138 (4th Cir. 1994).

[10] Exhibit B. Dividing the fee sought by hours Plaintiff seek to recover.

opponent to be expected in a civil rights suit challenging state action; one of the Attorney General's core responsibilities is to defend the state's position vigorously within the bounds of legal ethics. And the Attorney General did litigate vigorously, moving to dismiss for lack of standing, briefing and arguing that motion, and filing a comprehensive answer. However, once *Bostic* fatally undermined the state's legal position, the Attorney General prudently decided to conserve both the state's and plaintiffs' resources by refraining from futile argument. *See* State Defs'. Resp. to Pls' for J. on the Pleadings, *Fisher-Borne v. Smith*, No. 12-cv-00589 (4th Cir. Oct. 9, 2014), Docket No. 122. This matter could have ended at that point, but it did not. Instead, the plaintiffs were then forced to respond to intervenors, who belatedly and unnecessarily prolonged the case. *See* Proposed Defendant-Intervenors' Mem. of Law in Supp. of Mot. For Intervention, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. Oct. 9, 2014), Docket. No. 76.

*The novelty and difficulty of the questions raised (2nd factor).* The application of long-standing constitutional rights to new contexts – here, the protections of the Equal Protection and Due Process clauses to same-sex couples who seek legal recognition for their families – presents the quintessential example of novel and difficult work. Plaintiffs argued, from the outset, that these constitutional provisions made the challenged North Carolina practices unlawful and guaranteed plaintiffs the parental rights they sought to vindicate. Although this position proved correct, it was far from well-established when plaintiffs brought suit in 2012. The Fourth Circuit firmly resolved the underlying constitutional issues in plaintiffs' favor only in 2014, two years after plaintiffs first brought their claims. *Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014). The Supreme Court held only *this summer*, that the Due Process and Equal Protection clauses of the Fourteenth Amendment protect same-sex couples' fundamental right to marry – just as plaintiffs maintained. *Obergefell v. Hodges*, 135 S.Ct. 2584 (2015).

*The skill required to properly perform the legal services rendered (3rd factor) and the experience, reputation and ability of the attorney (9th factor).* The attorneys who took on these difficult issues, and prevailed entirely, were extraordinarily skilled and well-credentialed, including the attorneys for whose work plaintiffs now seek compensation. For example, Jonathan Sasser has been practicing law for over 30 years and is one of the most highly-regarded lawyers in the state. Ex. E. He was honored in 2015 as North Carolina's foremost business litigator by *Business North Carolina* Magazine. *Id.* Garrard R. Beeney is co-head of the Sullivan & Cromwell's Intellectual Property and Technology Group and has been elected to the American College of Trial Lawyers. Ex. F.

*The attorney's opportunity costs in pressing the instant litigation (4th factor).* The time spent on this litigation diverted these lawyers from fulltime pursuit of their normal practices, which involve complex corporate disputes, securities and fraud cases, intellectual property, and competition cases. Such work is well compensated by appreciative clients. *Id.* In the case of the law firm lawyers, that compensation would have been at rates substantially higher than those sought in this petition. *Id.* Had plaintiffs' counsel been free to devote to their regular practices the 1054 hours for which plaintiffs' seek compensation under § 1988(b) they would have earned substantially more than the $311,196.00 sought here. Their opportunity cost thus clearly supports the reasonableness of the modest fee award plaintiffs seek.

*The customary fee for like work (5th factor).* As shown above, customary fees for like work would be at least as high, and probably higher, than those sought here. *See supra* Section IV (A). The private-firm lawyers regularly charge higher rates than those sought here for civil litigation of comparable complexity and intellectual challenge to that performed in this case. And, experienced members of the North Carolina bar confirm that the rates are reasonable by North

17

Carolina standards. Finally, similar or higher rates have been approved in similar civil rights cases. *See supra* at 12 (citing *McAfee v. Boczar*, 738 F.3d 81, 91 (4th Cir. 2013), *as amended* (Jan. 23, 2014) and *McGee v. Cole*, No. CIV.A. 3:13-24068, 2015 WL 4366161, at *6-7 (S.D.W. Va. July 16, 2015)). *See also infra* at 19-20 (citing total fee award in other federal constitutional cases). Although it is hard to call any fee "customary" for such specialized litigation, all reasonable comparators support the fee award sought here.

*The amount in controversy and the results obtained (8th factor).* Plaintiffs did not seek money damages; they sought declarative and injunctive relief regarding their marital and parental rights. *See* Compl., Prayer for Relief *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. June 13, 2012); First Am. Compl., Prayer for Relief, *Fisher-Borne v. Smith*, No. 12-cv-00589 (M.D.N.C. July 17, 2013), Docket No. 38-1 (14-02228). And they achieved that, completely. *See* Judgement, *Smith*, No. 12-cv-00589 (4th Cir. Oct. 14, 2014), Docket. No. 92. In doing so, they established the right of all North Carolina families to have their parental rights recognized in law. The media and the public have recognized plaintiffs as trailblazers. *See* Anne Blythe, *Gay couples in NC seek legal adoption as marriages continue*, THE NEWS AND OBSERVER, Oct. 13, 2014, *available at* http://www.newsobserver.com/news/politics-government /state-politics/article10094846.html. The results obtained are, by any measure, outstanding.

*The undesirability of the case within the legal community in which the suit arose (10th factor).* In June of 2012, when the lawyers in this case took on the cause of equality in family rights for gay North Carolinians, they defied overwhelming popular opinion in the state. A statutory ban on gay marriage passed both chambers of the state legislature overwhelmingly in 1996 and was still in effect. *See* North Carolina Stat. § 51-1.2 ("Marriages between persons of the same gender are not valid in North Carolina). The month before this case was filed, North Carolina

voters approved Amendment One by a margin of greater than 20%—38.96% to 61.04%—constitutionalizing the ban on gay people in North Carolina uniting in marriage to form a family. The lawyers in this case fought on behalf of a cause that was deeply unpopular in North Carolina, and the 10th *Barber/Johnson* factor calls for recognition of that fact.

    *Attorneys' fees awards in similar cases (12th factor).*   The $311,196.00 award plaintiffs request here is also consistent with fees awarded, or agreed to, in other successful constitutional challenges to state laws denying legal rights and liberties to same-sex couples. *See* Mem. Decision and Order, *Latta v. Otter*, No. 13-cv-00482 (D. Idaho Dec. 19, 2014), Docket No. 139 (awarding $401,663 in fees and costs for successful constitutional challenge to state same-sex marriage ban) (Ex. K); Op. and Order, *Bishop v. Smith*, No. 04-cv-848 (N.D. Okla. May 1, 2015), Docket No. 306 (awarding $298,742.77 for successful constitutional challenge to state same-sex marriage ban) (Ex. L); Stipulation and Agreement as to Costs and Attorneys' Fees, *Wolf v. Walker*, No. 14-cv-64 (W.D. Wis. Mar. 27, 2015), Docket No. 194 (stipulated award of $1,055,000 in fees and costs for successful constitutional challenge to state same-sex marriage ban) (Ex. M); and "Release and Settlement of Claim (Attorneys' Fees and Costs)," (resolving fee and costs claim for  $325,000 after successful constitutional challenge to state same-sex marriage ban in *Baskin v. Bogan*, 12 F.Supp.3d 1144, (S.D. Ind. 2015)) (Ex. N).

## V. APPORTIONMENT OF FEES LIABILITY

    "The proposition that district courts have discretion over the proper allocation of a fee award among multiple defendants is widely recognized." *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 677 (4th Cir. 2015).  A Court is free to adopt a method used in prior cases, "or it may select another method entirely." *Id.* (citation omitted).  Where the record provides a basis to determine the amount of effort plaintiffs had to expend against each of several defendants, fee

19

liability may be reasonably apportioned on that basis. *Cf. Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (approving 90-10 allocation of fee award where counsel devoted of 90% of time seeking relief from one defendant and 10% from the other).

While plaintiffs anticipate that all fees in this case will be paid from the state treasury, Plaintiffs have nonetheless divided the hours and fees records to show the effort that went into litigation against the Attorney General before *Bostic* and the effort that went into litigation against the legislative intervenors post-*Bostic* using October 9, 2014, the date the legislative intervenors first appeared. Ex. B. Plaintiffs respectfully suggest that fee liability be apportioned among individual defendants on that basis.[11]

## VI. CONCLUSION

As the prevailing party, the ACLU requests that the Court award the full lodestar amount for hours it spent establishing and then defending the legal principles that the Fourth Circuit had established in *Bostic* and the Supreme Court ultimately upheld in *Obergefell*.

---

[11] *See* Exhibit B. Because the legislative intervenors briefed and otherwise acted in this matter jointly, the record affords no basis for subdividing fee liability among them.

This the 13th day of October 2015.

Of Counsel:

Rose A. Saxe
James D. Esseks
American Civil Liberties Union
Foundation
125 Broad Street
New York, New York 10004-2400
Telephone: (212) 549-2500
Facsimile: (212) 549-2646
rsaxe@aclu.org
jesseks@aclu.org


Elizabeth O. Gill
American Civil Liberties Union
Foundation
39 Drumm Street
San Francisco, California 94111-4805
Telephone: (415) 343-1237
Facsimile: (415) 255-1478
egill@aclunc.org
Christopher Brook
N.C. State Bar No. 33838
ACLU of North Carolina
P.O. Box 28004
Raleigh, North Carolina 27611-8004
Telephone: (919) 834-3466
Facsimile: (866) 511-1344
cbrook@acluofnc.org

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
Patrick O'Donnell
Harris, Wiltshire & Grannis, LLP
2009 Fairview Road
#6220
Raleigh, NC 27628
Telephone: (919) 429-7386
Facsimile: (202) 730-1301
arichardson@harriswiltshire.com

Jonathan D. Sasser
N.C. State Bar No. 10028
Jeremy M. Falcone
N.C. State Bar No. 36182
P.O. Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jsasser@aclunc.org
jfalcone@aclunc.org

Garrard R. Beeney
David A. Castleman
C. Megan Bradley
William R.A. Kleysteuber
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
beeneyg@sullcrom.com
castlemand@sullcrom.com
bradleyc@sullcrom.com
kleysteuberr@sullcrom.com

*Attorneys for the Plaintiffs*

1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing has been filed electronically with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

counsel of record.

This the 13th day of October, 2015.

HARRIS WILTSHIRE & GRANNIS LLP

/s/ Amy E. Richardson
Amy E. Richardson
N.C. State Bar No. 28768
Harris, Wiltshire & Grannis, LLP
2009 Fairview Rd. #6220
Raleigh, NC 27628
Telephone Number: (919) 429-7386
Facsimile:  (202) 730-1301
amy.richardson@harriswiltshire.com

*Attorney for Plaintiffs*

2